Morgan, J.
On the sixth of February, 1857, Paulina Pickett, by act under private signature, declared as follows: “ State of Louisiana, parish of Bossier, be it remembered hereby, that I, Panlina Pickett, of the above residence, for and in consideration of tbe recitals hereinafter made, do hereby bargain, sell, grant, transfer and convey unto *530 Robert C. Cummings, of the city and parish of Orleans, in the State of Louisiana, the following described, property, all lying in the parish of Bossier and State of Louisiana, namely, the following lands. * * * This conveyance is for the term of the natural life of the said Robert C. Cummings, the intention of this conveyance being to give to the said Cummings the usufruct of all the aforedescribed property for and during his natural life. It is the object of this conveyance to give the said usufruct, as aforesaid, to commence with the first of the current year, and to embrace the crops of every description that shall be made on said plantation the current year, together with the provisions of every description, and plantation supplies now on said plantation, and all the rights, privileges and improvements appertaining to said plantation, land, slaves, etc. And to the end that the said Cummings may fully enjoy the estate herein conveyed to him in full property for the term aforesaid to be by him used, occupied, farmed, leased, and enjoyed in his own name.
“ The consideration of the above conveyance is the affection I have and bear towards the said R. C. Cummings, as well as the obligations I feel under toward him for his personal services and attention to my business as well in the parish of Bossier as elsewhere.”
• On November 20, 1865, Cummings, to secure Mrs. Pickett against liability on certain accommodation paper, amounfing to $300,000, which she had given for the benefit of R. C. Cummings & Co., executed a mortgage on the Chalk'Level plantation. In this act of'mortgage his usufruct is not mentioned.
On the third July, 1866, Mrs. Pickett mortgaged to the plaintiff, T. B. Lee, the Chalk Level plantation to secure the payment of ten notes for the sum of ten thousand dollars each, which notes were drawn by Cummings in favor of Lee.
On the third September, 1866, by private act Mrs. Pickett executed a release of the mortgage granted to lier by Cummings, and required the recorder of Bossier parish to make Lee the first mortgage, reserving to herself the second mortgage. The act recites:
“Know all men by these presents, that I, Mrs. Paulina Pickett, of the parish of Bossier, in the State of Louisiana, do hereby declare as follows, to wit: that whereas, by an act dated Caddo parish, the twentieth November, 1865, R. C. Cummings did specially mortgage and hypothecate in my favor his life interest in the Chalk Level plantation,” etc.
Lee caused the Chalk Level plantation to be seized under his mort-' gage. It was sold, the proceeds remaining in'the hands of the purchaser. Prior to the sale the Citizens’ Bank, Mrs. M. B. Conners, and the Union National Bank filed their oppositions claiming the proceeds *531 of the sale of the land on the ground that they were the holders of some of the series of the notes given by Cummings to Lee, and secured by the same mortgage.
Alter filed his opposition, claiming the proceeds of this plantation. He claims a mortgage arising from the registry made on the twenty-fourth March, 1861, in the recorder’s office of Bossier parish, of a judgment rendered in his favor, against Cummings & Co., by the Third District Court of New Orleans, on the twenty-sixth January, 1866, for the sum of $46,150; also a legal mortgage upon the land resulting from the registry in the same office, of a judgment in his favor, against Mrs. Pickett, as garnishee, rendered by the same court on June 13, 1866. He alleges that the registry of these judgments operated as a mortgage on all the interest Cummings had in the Chalk. Level plantation ; that at the time of the registry of the judgment Cummings was the usufructuary of the land, and that he is still the usufructuary and in possession thereof. He contends further that Mrs. Pickett, having in the mortgage from Cummings to herself, acknowledged Cummings to be the owner of the land, it is now subject to the mortgage resulting from the registry of the aforesaid judgments in his favor, and he therefore claims to be paid by preference over Lee.
The decision in the case of Alter v. Pickett, from which resulted the judicial mortgage in Alter’s favor, recorded in Bossier parish and affecting the Chalk Level plantation, was reversed. When the judgment fell, the mortgage upon which it rested fell with it, and the contest between the parlies is disembarrassed of this element of difficulty. They are left to contest their rights upon the following state of facts: Alter, as the judgment creditor of Cummings, claims to have a mortgage upon the plantation, superior to the one under which the plaintiff and intervenors set up their rights, because he says Mrs. Pickett, when she took a mortgage from Cummings on the Chalk Level plantation thereby acknowledged the title of the plantation to be in him, and that inasmuch as his judgment was recorded before the act of mortgage from Mrs. Pickett to Lee was passed, his claim is superior to Lee’s. And he contends that Cummings’ title to the plantation can not be questioned.
“If the contest here was between Mrs. Pickett and Cummings, or a party claiming against them, either individually or together, the doctrine of estoppel would have to be considered. But others’ rights are in the scale, and estoppel, which applies only to the parties or their ayant cause, can not weigh against them.”
It is to be observed that there is no question of usufruct here, or whether the usufruct passed with the sheriff’s sale, or the title thereto. The usufruct not having been sold, the sole question is, did the record *532 ed judgment of Alter against Cummings in the parish of Bossier affect the Chalk Level plantation ?
To mortgage a piece of property, the mortgager must be the owner of it. Now Cummings was never the owner of the Chalk Level plantation. He had the usufruct of it, but usufruct is defined to be the right of enjoying a thing the property of which is vested in another, and we are quite convinced that when Mrs. Pickett took her mortgage from him, she never fancied that she was taking any thing more than a mortgage upon his usufruct. ■ Under no circumstances can this act of mortgage be looked upon as a title to the property, or an acknowledgment that it belonged to him, at any rate in so far as to affect the rights of third persons. So far at least as the public was concerned, Mrs. Pickett’s title to the property was not changed, and the mortgage which she gave to Lee was perfectly good, valid, and binding in favor of all those who held obligations secured thereby.
At the threshold of this investigation therefore an impassible barrier is presented to Alter’s pretensions, and this renders an examination of the other points which have been presented and ably argued unnecessary.
Judgment affirmed.